# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **CHRIS WIMMER,** | ) | CLERKS OFFICE US DISTRICT COURT<br>AT ROANOKE, VA<br>FILED<br>June 23, 2026<br>LAURA A. AUSTIN, CLERK<br>BY: */s/ Hannah Warren*<br>DEPUTY CLERK |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 7:25-cv-599** |
| **NEW MILLENNIUM BUILDING** | ) | |
| **SYSTEMS, LLC,** | ) | **By:    Michael F. Urbanski** |
| | ) | **Senior United States District Judge** |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter is before the court on a second motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) filed by defendant New Millennium Building Systems ("NMBS"). Mot., ECF No. 14. The amended complaint filed by plaintiff Chris Wimmer alleges that he was wrongfully terminated from his position at NMBS for raising safety concerns about the way a load was being handled. Am. Compl., ECF No. 13. Wimmer alleges that his termination was unlawful retaliation in violation of Virginia Code §§ 40.1-27.3 (Count I) and 40.1-51.2:1 (Count II). Id. ¶ 7.

In its second motion to dismiss, NMBS asks the court to dismiss Count I of the amended complaint.[1] ECF No. 14. NMBS argues that Count I should be dismissed because Virginia Code §§ 40.1-51.2:1 and 40.1-51.2:2 provide the exclusive remedy for workplace

---

[1] The second motion to dismiss does not ask this court to dismiss Count II, which is alleged identically to the way it was alleged in Wimmer's original complaint.

1

safety complaints like Wimmer's, and because Wimmer does not sufficiently allege that he made a good faith report of a violation of law to NMBS before his termination. Id. at 1.

For the reasons that follow, the motion to dismiss will be **DENIED**.

**FACTUAL BACKGROUND**

The facts that follow are garnered from Wimmer's amended complaint, ECF No. 13. Plaintiff Chris Wimmer was an employee at NMBS's Salem, Virginia plant since December 1998. Id. ¶ 11. He worked as a welder before he was promoted to the position of Quality Control Supervisor in 2016. Id. ¶¶ 25-26. As Quality Control Supervisor, Wimmer led a team of approximately 15 Welding Inspectors, regularly met with the American Welding Society and Steel Deck Institute to evaluate quality standards and helped to develop and audit the company-wide quality control manual. Id. ¶¶ 29-32. Wimmer alleges that he "consistently received promotions throughout his career." Id. ¶ 25.

Wimmer alleges that on or around July 2, 2024, while conducting a safety audit, he "observed another employee engaging in a very dangerous practice at work that endangered workers." Id. ¶¶ 1, 42. He alleges saw an employee standing next to an unsecure load on the unprotected side of a forklift. Id. ¶¶ 43, 45. Because of where the employee was standing, there was both a high risk that the load could fall and that it could fall on the unprotected side. Id. ¶ 45-46. If the load were to fall on the employee, the employee could be seriously harmed or killed. Id. ¶ 47. Wimmer "believed he was witnessing violations of OSHA, VOSH, and general workplace safety regulations," and NMBS's Job Safety Analysis did not provide a solution for this potentially catastrophic situation. Id. ¶¶ 44, 49. Wimmer and a colleague reported this concern to the traffic supervisor at the time, which was Wimmer's duty as a supervisor. Id. ¶¶

2

50-51. It was also his duty to report his concerns to the employee engaging in the procedure. Id. ¶ 50.

Wimmer alleges that the traffic supervisor met with him the following day about his report. Id. ¶ 52-53. Wimmer confirmed that he thought the loading procedure was unsafe. Id. ¶ 54. The traffic supervisor, Derek Wade, allegedly did not investigate the situation further, but instead told Wimmer that "management knows the procedures." Id. ¶¶ 53-55. Wimmer alleges he insisted that the procedure "could be done in a safer way." Id.

Wimmer alleges that on July 8, 2024, NMBS told him that he was being investigated for "harassment and targeting an employee." Id. ¶ 56. The targeted employee in question was the employee that Wimmer had seen "engaging in a potential safety violation." Id. ¶ 57.

Wimmer further alleges that on July 9, 2024, he met with the General Manager (Brian Auen), Production Manager (Mike Rader), and three other employees of NMBS to "discuss the situation." Id. ¶¶ 58-59. Wimmer alleges that he was interrogated and berated, in the Manager's attempt to "force [Wimmer] to admit that he bullied the employee against whom he brought the safety complaints." Id. ¶ 60. Wimmer alleges that the General Manager believed that Wimmer was bringing complaints personally against the employee who had been engaging in the safety hazard. Id. ¶ 60. When Wimmer insisted during the meeting that his concerns were about "safety, safety, safety," and that he was "challenging the JSA procedure," the General Manager indicated that he didn't believe Wimmer and that "there is no more challenging!" Id. ¶¶ 61-66.

After this interaction, Wimmer alleges Auer "refused to acknowledge" Wimmer's safety complaint and chose to suspend him, along with two other employees. Id. ¶¶ 67, 80.

Wimmer alleges that he emailed the NMBS Corporate office about this issue. Id. ¶ 68. His email reiterated his concern for safety, stating (1) "I pointed out an unsafe procedure with a transportation employee to [Mr. Auen]"… who "attempted to justify the act by saying, 'JSA says we can do it.'"; (2) "This job could have been performed more safely by simply engaging the forklift, attaching straps to the trailer, and getting back into the forklift to go around the trailer to tighten the straps … When observed, [another supervisor] and I agreed that the process could be performed more safely."; and (3) "this was not the first time I felt threatened and intimidated for speaking up about safety." Id. ¶¶ 69-71 (emphasis removed); ECF No. 20 (Ex. 2 to amended complaint).

Wimmer alleges that his complaints to NMBS "referenced multiple OSHA and VOSH statutes and regulations that were being violated" and "attempted to remedy multiple violations of OSHA and VOSH." ECF No. 13 ¶¶ 72, 79. In his amended complaint, he specifies that the loading process he observed violated the duties outlined in: OSHA, 29 U.S.C. § 654, which requires employers to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees,"; Va. Code. Ann. § 40.1-51.1, which imposes a similar requirement; and the regulations codified at 29 C.F.R. § 1910.178 that regulate the operation, and loading and unloading procedures of forklifts. Id. ¶¶ 73-78.

Wimmer and two other employees were placed on suspension while NMBS investigated the matter. Id. ¶ 80. As the matter was investigated, Wimmer maintained that he had witnessed this unsafe procedure, that the JSA provided no safe method for completing the load, and that he recommended a safer method. Id. ¶¶ 81-83. He alleges that he faced

4

"extreme pushback" during the investigation because his proposed safer method took more time, "and the NMBS loading crew always put efficiency and profits over safety." Id. ¶ 84-85.

Wimmer was terminated from his job at NMBS on August 2, 2024. Id. ¶ 86. He alleges that the reason he was given for his termination was for "unsatisfactory performance," being "argumentative during the investigation," and "lack of candor and honesty during the investigation." Id. ¶ 87. Wimmer alleges that he was never told that his performance or attitude were an issue during his 25 years at the company. Id. ¶ 88. He alleges that he was "only upset about the investigation because he believed he was being retaliated against for bringing safety complaints to try and prevent someone from potentially losing their life!" Id. ¶ 89. Neither of the other two employees suspended during the investigation were terminated, and NMBS implemented a change to the loading procedures based on his recommendation, Wimmer alleges. Id. ¶¶ 90-91.

Based on these alleged facts, Wimmer alleges that he was terminated for identifying safety concerns that he believed to be life-threatening. Id. ¶ 92.

## PROCEDURAL BACKGROUND

Wimmer filed a complaint with the Virginia Occupational Safety and Health Program on August 21, 2024, and the Department of Labor and Industry informed him that he could file a complaint in Circuit Court on July 25, 2025. Id. ¶¶ 15-16; ECF No. 19 (Ex. 1 to amended complaint).

This case was filed in the Circuit Court for the City of Roanoke on July 31, 2025, ECF No. 1-1, and removed to federal court on August 28, 2025. ECF No. 1.

In his original complaint, Wimmer alleged that his termination was unlawful under both Virginia's Whistleblower Protection Statute, Virginia Code § 40.1-27.3 (Count I) and the anti-discrimination provision of Virginia's employee safety protection laws codified at Virginia Code § 40.1-51.2:1. ECF No. 1-1.

Defendant NMBS filed a motion to dismiss the first complaint for failure to state a claim on September 3, 2025. ECF No. 5. That motion was fully briefed, ECF Nos. 6, 8, 9, and the court held a hearing on the motion on November 4, 2025, ECF No. 10. The court granted in part and denied in part the motion to dismiss on February 10, 2026. ECF Nos. 11, 12. Specifically, the court dismissed Count I, Wimmer's claim under the Whistleblower Protection Statute (Va. Code § 40.1-27.3) because the complaint did not include sufficient facts to support his claim that he was terminated because he raised a violation of a law or regulation. ECF No. 11 at 10. And the court denied the motion to dismiss as to Count II, Wimmer's claim under the anti-discrimination provision of Virginia's employee safety protection laws (Virginia Code § 40.1-51.2:1). Id. at 10-13. The court granted Wimmer an opportunity to amend his complaint as to Count I. Id. at 2.

Wimmer filed his amended complaint on February 24, 2026. ECF No. 13. NMBS filed an answer, ECF No. 16, and moved to dismiss Count I of the amended complaint, ECF No. 14. The motion is fully briefed. ECF Nos. 15, 17, 18.

## STANDARD OF REVIEW

The standard of review is unchanged from court's analysis of NMBS's first motion to dismiss. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations, which, if accepted as true, "'state a claim

to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint

must contain "more than labels and conclusions" or a "formulaic recitation of the elements

of a cause of action." Twombly, 550 U.S. at 555. This plausibility standard requires a plaintiff

to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal,

556 U.S. at 678.

When ruling on a motion to dismiss, the court accepts "the well-pled allegations of the

complaint as true" and "construe[s] the facts and reasonable inferences derived therefrom in

the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir.

1997). While the court must accept as true all well-pleaded factual allegations, the same is not

true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A court need not accept

as true "'legal conclusions, elements of a cause of action, . . . bare assertions devoid of further

factual enhancement, . . . unwarranted inferences, unreasonable conclusions, or arguments.'"

Richardson v. Shapiro, 751 F. App'x 346, 348 (4th Cir. 2018) (quoting Nemet Chevrolet, Ltd.

v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)) (internal quotation marks

omitted). Thus, a complaint must present sufficient nonconclusory factual allegations to

support a reasonable inference that the plaintiff is entitled to relief and the defendant is liable

for the unlawful act or omission alleged. See Francis v. Giacomelli, 588 F.3d 186, 196-97 (4th

Cir. 2009) (affirming dismissal of claim that simply stated a legal conclusion with no facts

supporting the allegation) and King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare

legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim.") (quoting Iqbal, 556 U.S. at 679).

## DISCUSSION

In Count I of his amended complaint, Wimmer alleges that he was terminated in violation of Virginia's Whistleblower Protection Statute. The statute, codified at Virginia Code § 40.1-27.3, provides that "[a]n employer shall not discharge . . . an employee . . . because the employee . . . in good faith reports a violation of any federal or state law or regulation to a supervisor[.]" Va. Code § 40.1-27.3(A)(1).

NMBS moves to dismiss Wimmer's amended whistleblower claim, arguing that Wimmer does not sufficiently allege in his amended complaint that he made a good faith report of a federal or state law or regulation. Specifically, NMBS argues that Wimmer does not sufficiently allege that his report to NMBS was "'rooted in specific violations of law' as is required to sustain a claim under the VWPL." ECF No. 15 at 6-7 (citing Wimmer v. New Millennium Bldg. Sys., LLC, No. 7:25-CV-599, 2026 WL 373046, at *4 (W.D. Va. Feb. 10, 2026)(quoting Workman v. LHC Grp., Inc., No. 1:23-CV-048, 2025 WL 474923, at *5 (W.D. Va. Feb. 12, 2025), aff'd, No. 25-1210, 2026 WL 1266169 (4th Cir. May 8, 2026)).

NMBS also asserts that the court should dismiss Wimmer's claim under the Whistleblower Protection Statute because Virginia Code §§ 40.1-51.2:1 and 40.1-51.2:2 provide the exclusive remedy for claims about "alleged safety concerns in the workplace." Id. at 5.

For the reasons discussed herein, the court **DENIES** NMBS's motion to dismiss as to Count I.

## I.   "Good Faith Report of a Violation of State or Federal Law"

To state a retaliatory discharge claim under Virginia's whistleblower protection statute, Wimmer must allege that he: "(1) made a good faith report of a federal or state violation to a supervisor, (2) was discharged by [his] employer, and (3) the report was the 'but for' cause of their discharge." Wimmer, 2026 WL 373046, at *3 (citing Chamberlain-Loving v. Renal Treatment Centers-Mid-Atl., Inc., 787 F. Supp. 3d 211, 217 (E.D. Va. 2025)). In its second motion to dismiss, NMBS argues that Wimmer fails to allege in the first element in his amended complaint, i.e., that he does not allege that he "made a good faith report of a violation of state or federal law prior to his termination." ECF No. 15 at 5.

The court dismissed Count I of Wimmer's original complaint because the allegations in that complaint did not allege facts "sufficient to support his claim that he acted as a whistleblower as regards a violation of a law or regulation." Wimmer, 2026 WL 373046, at *3. Now, in its second motion to dismiss NMBS argues that "nothing has changed with the filing of the First Amended Complaint," in that "there is still nothing pled that establishes that when he reported his concerns to New Millennium he reported them in a manner that suggested those specific regulations were being violated." ECF No. 15 at 6.

A plaintiff alleging a good faith report of a legal violation under § 40.1-27.3 need not allege that "the underlying report of unlawfulness was in fact meritorious…[i]nstead, a plaintiff must only allege that they 'subjectively and reasonably believed that [their] employer was engaged in unlawful [conduct]." Chamberlain-Loving, 787 F. Supp. 3d at 218 (citing Wood v. Bristol Va. Util. Auth., 661 F. Supp. 3d 538, 550 (W.D. Va. 2023)). If a plaintiff "subjectively and reasonably believed that his employer was engaged in unlawful practices….when he

9

reported the matter to the safety manager and to OSHA, then he establishes a plausible case at this juncture and survives the motion to dismiss." Wood, 661 F.3d at 550 (citing, inter alia, Peters v. Jenney, 327 F.3d 307, 321 (4th Cir. 2003)("a standard which we will refer to as one of 'reasonable belief.'").

NMBS does not challenge that Wimmer's report was made in good faith. Wimmer, who pleads that he "believed he was witnessing violations of OSHA, VOSH, and general workplace safety regulations," and that his "complaints referenced multiple OSHA and VOSH statutes and regulations that were being violated," has plausibly alleged his subjective belief that the conduct he reported was unlawful. ECF No. 13 ¶¶ 44, 72. See Chamberlain-Loving, 787 F.Supp. at 218 (finding that a complaint plausibly alleged subjective belief that the employer was violating the law "because she reported that the technicians were 'illegally performing duties.'")(emphasis in original).

Rather, the focus of NMBS's motion to dismiss is in the argument that Wimmer's report was insufficiently "rooted in specific violations of law." ECF No. 15 at 5-6. This court has articulated that, for a court to determine that the plaintiff's belief was objectively reasonable, the report "must be rooted in specific violations of law." Workman, 2025 WL 474923, at *5. This does not necessarily mean that a plaintiff's complaint must "plead with particularity the unlawful conduct reported." Chamberlain-Loving, 787 F. Supp. 3d at 218. Nor is this a requirement that a plaintiff's underlying report to their employer or law enforcement specifically reference the statute that they believe was being violated. Id. Rather, the requirement that the complaint be "rooted in specific violations of law" means that "for the purposes of a motion to dismiss, a plaintiff must plausibly link the reported misconduct

to violations of law." <u>Workman v. LHC Grp., Inc.</u>, No. 1:23-CV-048, 2024 WL 3572305, at *4 (W.D. Va. July 29, 2024)(<u>citing, c.f.</u> <u>Colquitt v. Bon Secour Mercy Health</u>, No. 4:21-cv-053, 2022 WL 479093, at *5 (E.D. Va. Feb. 16, 2022)(holding a complaint alleging a report of "misconduct" and "unethical practices" was insufficiently linked to a violation of law); <u>Petersen v. DC Mech., LLC</u>, No. 1:22-cv-784, 2022 WL 22695554, at *4 (E.D. Va. Aug. 24, 2022)(granting a motion to dismiss where "the plaintiff 'had not alleged sufficient facts showing that he reports he made of 'unlawful, and unethical practices' were reports about violations of federal and state law."); <u>Chenault v. RBI Corp.</u>, 108 Va. Cir. 529, 2021 WL 8776245, at *2 (Oct. 22, 2021)("allegations of 'voicing concerns' or 'objecting to a cavalier attitude' are simply not enough to support a claim that Plaintiff in good faith reported a violation to a supervisor."). <u>See also</u> <u>Wimmer</u>, 2026 WL 373046 at *4 (citing the same).

Wimmer's amended complaint is the operative pleading in this case. <u>Fawzy v. Wauquiez Boats SNC</u>, 873 F.3d 451, 455 (4th Cir. 2017). Accepting "the well-pled allegations of the complaint as true" and "constru[ing] the facts and reasonable inferences derived therefrom in the light most favorable to" Wimmer, <u>Ibarra</u>, 120 F.3d at 474, the question raised is whether Wimmer plausibly links the reported misconduct to violations of law in his amended complaint to this court. The court finds that he does.

Wimmer alleges that he witnessed at NMBS a loading procedure in which an employee was standing next to an unsecured load on a forklift. ECF No. 13 ¶¶ 43, 45-47. He alleged that "[b]ased on the lack of securement, [he] believed that there was a very high risk that the load could fall," "this presented a significant safety risk because if the load fell, it would fall on the unprotected side where the employee was standing," meaning that "the load could potentially

fall on the employee, and the employee could be seriously harmed or killed." Id. ¶¶ 46-47.

"Immediately," Wimmer alleges, he "believed he was witnessing violations of OSHA, VOSH

and general workplace safety regulations" and he notified the traffic supervisor of what he

witnessed and of his concern. Id. ¶¶ 44, 51. He alleges that NMBS's then-current policies

provided no solution for this situation that would "prevent potential catastrophic incidents."

Id. ¶ 50.

Wimmer alleges that his "complaints referenced multiple OSHA and VOSH statutes,"[2]

and that his "complaints about Defendant's unsafe loading procedure attempted to remedy

multiple violations of OSHA and VOSH." Id. ¶ 72. More specifically, his amended complaint

cites to the requirement under both 29 U.S.C. § 654 and Va. Code § 40.1-51.1 that an employer

"furnish to each of his employees [safe][3] employment and a place of employment [that

is/which are] free from recognized hazards that are causing or likely to cause death or serious

physical harm to his employees[.]" Id. ¶¶ 73-74 (quoting 29 U.S.C. § 654; Va. Code § 40.1-

51.1).

Wimmer also alleges that his detailed complaint to his supervisors that the unsecured

load on the forklift was unsafe and his suggestion of a procedure to strap down the load was

an attempt to "[bring] complaints of and [offer] potential remedies to" NMBS's alleged

violations of 29 CFR § 1910.178. Id. ¶ 102-103. 29 CFR § 1910.178 "provides specific

---

[2] The court notes that Wimmer's follow-up email to his supervisors, attached to the amended complaint at Exhibit 2, does not reference any statute or regulation. ECF No. 20. "Although this Court accepts the well-pleaded facts in the complaint as true, where there is a conflict between the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Thomas v. Carmeuse Lime & Stone, Inc., No. 7:12-CV-00413-JCT, 2012 WL 6566145, at *4 (W.D. Va. Dec. 17, 2012)(cleaned up). However, the amended complaint does not allege that this email is the entirety of his complaints to his employer. Therefore, the exhibit does not conflict with this allegation and the court accepts this alleged fact as true.
[3] This word appears in the language of Va. Code § 40.1-51.1 but not 29 U.S.C. § 654.

regulations for the operation of forklifts and for loading and unloading procedures from the forklifts" in order to mitigate risk. Id. ¶¶ 75-78; 97-100. See 29 CFR § 1910.178(o)(1)("only stable or safely arranged loads shall be handled. Caution shall be exercised when handling off-center loads which cannot be centered."); 29 CFR § 1910.178(o)(5)("a load engaging means shall be placed under the load as far as possible; the mast shall be carefully tilted backward to stabilize the load."); 29 CFR § 1910.178(o)(6)("extreme care shall be used when tilting the load forward or backward, particularly when high tiering.")

Simply put, Wimmer alleges that he witnessed a procedure that "presented a significant safety risk" that could cause death or serious harm to an employee using a forklift. Id. ¶¶ 46-47. He further alleges that the procedure ran afoul of workplace safety statutes requiring employers to provide a workplace free from "hazards … causing or likely to cause death or serious physical harm" and the regulations designed to mitigate those hazards from forklifts. Id. ¶¶ 73-79. Taking all factual allegations as true and making all reasonable inferences in his favor, this is a plausible link between the alleged action and the law. At this stage of the litigation, this is sufficient to allege that Wimmer made a good faith report of a violation of state or federal law. He states a claim under the Whistleblower Statute.

## II.    "Excusive" Remedies for Violations of the Virginia Whistleblower Protection Law, Virginia Code § 40.1-27.3.

Wimmer's amended complaint alleges violations of both the Virginia Whistleblower Protection Statute, Virginia Code § 40.1-27.3 (Count I), and Virginia Code § 40.1-51.2-1 (Count II). ECF No. 13 ¶ 1. In its second motion to dismiss, NMBS argues that the court should dismiss Wimmer's whistleblower claim because he is limited to the exclusive remedies

13

available under the Virginia Code § 40.1-51.2:2 for employees who allege retaliation for making a safety complaint. ECF No. 15 at 4-5.[4] In other words, NMBS argues that because Virginia courts have held that "where a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise[,]" Wimmer's claim under the Whistleblower Statute "is preempted by Virginia Code Sections 40.1-51.2:1 and 40.1-51.2:2." Id. at 4-5 (quoting Sch. Bd. of City of Norfolk v. Giannoutsos, 238 Va. 144, 147, 380 S.E.2d 647, 649 (1989)).

The court finds this argument unpersuasive and **DENIES** the motion to dismiss.

Wimmer raises claims under two different statutes. Virginia Code § 40.1-27.3, enacted in 2020, bars retaliation against an employee because they reported a violation of any federal or state law. Virginia Code § 40.1-51.2:1, enacted in 1979, bars retaliation against an employee because they filed a safety or health complaint. The rights created by these two statutes are not the same even though, as courts have noted, the same conduct may give rise to claims under both statutes. See Cook v. Roanoke Elec. Steel Corp., No. 7:22-CV-00040, 2023 WL 3059160, at *7 (W.D. Va. Apr. 24, 2023), aff'd, No. 23-1511, 2024 WL 5166610 (4th Cir. Dec. 19, 2024)("§§ 40.1-27.3(A)(1) and 40.1-51.2:1 prohibit essentially the same conduct: terminating an employee because he or she made a safety complaint to a supervisor. The only meaningful difference[5] between the two is that § 40.1-27.3 expressly imposes a good faith requirement, whereas § 40.1-51.2:1 protects 'any complaint' made by an employee 'to his

---

[4] NMBS raised this argument in its first motion to dismiss. ECF No. 6. The court did not address this argument in its decision on the first motion to dismiss because it decided this claim on different grounds. ECF No. 11 at 10.

[5] The court notes that the difference between § 40.1-27.3's bar against retaliation for reporting "a violation of any federal or state law or regulation" and § 40.1-51.2:1's bar on retaliation for "fil[ing] a safety complaint" is also meaningful. Wimmer, 2026 WL 373046, at *4.

employer or any other person under or related to the safety and health provisions of Title 40.1 of the Code of Virginia.'").

The remedies also differ. The Whistleblower Protection Statute allows for a complainant to bring a civil court action, and the court "may order as a remedy to the employee (i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs." Va. Code § 40.1-27.3(C). By contrast, a complainant under the safety statute must file a complaint with the Commissioner. Only if this remedy is exhausted may the complainant bring an action in circuit court, "for appropriate relief." Va. Code § 40.1-51.2:2. The rights created by these statutes are not identical, and neither are the remedies.

Virginia's Whistleblower Protection Statue provides a right and a remedy for employees who were retaliated against for reporting, "in good faith … a violation of <u>any</u> federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official." Va. Code § 40.1-27.3 (emphasis added). NMBS points to nothing in the Whistleblower Statute or its legislative history indicating that the phrase "any federal or state law or regulation" excludes statutes and regulations about workplace safety. The court sees nothing in the statute or its history indicating, as NMBS suggests, that a claim under the Whistleblower Statute "should be dismissed because it is preempted by" §§ 40.1-51.2:1-2. ECF No. 15 at 5.

In arguing that Va. Code §§ 40.1-51.2:1-2 provide the only remedy for complaints of safety-related regulatory violations, NMBS cites to a number of state and federal cases related

15

to <u>Bowman</u> common law retaliatory discharge claims, arguing that in these cases, "state and federal courts have consistently held that Virginia Code Sections 40.1-51.2:1 and 40.1-51.2:2 provide the exclusive state law remedy for employee complaints regarding alleged safety concerns in the workplace." ECF No. 15 at 5 (citing <u>Williams v. TMS Int'l, LLC</u>, 2021 WL 4071868, at *6 (E.D. Va. Sept. 7, 2021))(granting a 12(b)(6) motion to dismiss on a <u>Bowman</u> public policy wrongful discharge claim because Virginia Code § 40.1-51.2:2 provides the remedy); <u>Jenkins v. Heilig-Meyers Co.</u>, 57 Va. Cir. 448, 449-50 (Va. Cir. Ct. 1998)(granting demurrer for the same reason); <u>Judy v. Nat'l Fruit Prod Co.</u>, 40 Va. Cir. 244, 244-45 (Va. Cir. Ct. 1996)(same); <u>Pruitt v. Johnston Mem'l Hosp.</u>, 21 Va. Cir. 188, 188-89 (Va. Cir. Ct. 1990)(same); <u>Bass v. E.I. Dupont de Nemours & Co.</u>, 28 Fed. Appx. 201,205 (4th Cir. 2002), <u>cert. denied</u>, 536 U.S. 972 (2002)(affirming a motion to dismiss for an employment discrimination claim unrelated to workplace safety or the whistleblower statute)).

It's true that "when a statute creates a right and supplies a remedy for enforcing that right, Plaintiffs cannot successfully bring a <u>Bowman</u> claim." <u>Williams</u>, 2021 WL 4071868, at *5 (citing <u>Carmack v. Virginia</u>, 2019 WL 1510333, at *13-14 (W.D. Va. Apr. 5, 2019)). This is because "[t]he presence of an extensive statutory remedy indicates the legislature's intent to make a statute "self-contained ... [so] that it would [not] also serve as an 'articulated public policy of the Commonwealth of Virginia' that could also serve as the basis of a <u>Bowman</u> type claim." <u>Id.</u> at *6 (quoting <u>Gochenour v. Beasley</u>, 47 Va. Cir. 218, 224 (Va. Cir. Ct. 1998)). And where plaintiffs seek a remedy beyond that provided in the statute, the statutory remedy "is exclusive unless the statute says otherwise." <u>Sch. Bd. of City of Norfolk v. Giannoutsos</u>, 238 Va. 144, 147, 380 S.E.2d 647, 649 (1989)(denying money damages under a common law a

16

breach of contract theory where the legislature had created a particular remedy—that did not include money damages—for the plaintiff's claim).

This reasoning does not apply where two different statutes create rights and remedies that could apply to the same underlying conduct. Wimmer is not raising a <u>Bowman</u> claim or a common law claim. Nor does it appear that he is seeking remedies beyond those available in the applicable statutes.

Courts in the Fourth Circuit have thus far declined to rule that Virginia Code §§ 40.1-27.3 and 40.1-51.2:1 are mutually exclusive. <u>See, e.g.</u> <u>Cook</u>, 2023 WL 3059160, at *7 n. 14 (declining to rule on the exclusivity argument because the court granted summary judgment on the merits), <u>aff'd</u>, 2024 WL 5166610 at *1 n.1 ("we assume without deciding—as the district court did—that a plaintiff may bring a cause of action under both statutes and expressly decline to address the question of whether a plaintiff may maintain a claim under § 40.1-27.3 while also bringing a claim under § 40.1-51.2:1."). This court declines to rule that the statutes are exclusive in this case. Because Wimmer has sufficiently alleged both claims, the statutes provide rights and remedies for both claims, and there is nothing in the statute indicating an intent that the statutory remedies are exclusive, he may raise them both.

## CONCLUSION

For the foregoing reasons, defendants' second motion to dismiss for failure to state a claim, ECF No. 15 is **DENIED**.

An appropriate order will be entered.

Entered:   June 22, 2026

Michael F. Urbanski
U.S. District Judge
2026.06.22 17:19:29
-04'00'

Michael F. Urbanski
Senior United States District Judge